UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

BRYAN SLACKTA,

     Plaintiff,

v.                           Case No.:  8:24-cv-987-DNF

COMMISSIONER OF SOCIAL
SECURITY,

     Defendant.

_____

## **OPINION AND ORDER**

Plaintiff Bryan Slackta seeks judicial review of the final decision of the Commissioner of the Social Security Administration ("SSA") denying his claim for a period of disability and disability insurance benefits and for supplemental security income benefits. The Commissioner filed the Transcript of the proceedings ("Tr." followed by the appropriate page number), and the parties filed legal memoranda setting forth their positions. Plaintiff also filed a reply. As explained below, the decision of the Commissioner is **AFFIRMED** under § 205(g) of the Social Security Act, 42 U.S.C. § 405(g).

## I. Social Security Act Eligibility, Standard of Review, Procedural History, and the ALJ's Decision

### A. Social Security Eligibility

The law defines disability as the inability to do any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death, or which has lasted or can be expected to last for a continuous period of not less than twelve months. 42 U.S.C. §§ 416(i), 423(d)(1)(A), 1382c(a)(3)(A); 20 C.F.R. §§ 404.1505(a), 416.905(a). The impairment must be severe, making the claimant unable to do his previous work, or any other substantial gainful activity which exists in the national economy. 42 U.S.C. §§ 423(d)(2)(A), 1382c(a)(3)(A); 20 C.F.R. §§ 404.1505–404.1511, 416.905–416.911.

### B. Standard of Review

The Commissioner's findings of fact are conclusive if supported by substantial evidence. 42 U.S.C. § 405(g). "Substantial evidence is more than a scintilla and is such relevant evidence as a reasonable person would accept as adequate to support a conclusion. Even if the evidence preponderated against the Commissioner's findings, we must affirm if the decision reached is supported by substantial evidence." *Crawford v. Comm'r*, 363 F.3d 1155, 1158 (11th Cir. 2004). In conducting this review, this Court may not reweigh the evidence or substitute its judgment for that of the ALJ, but must consider the evidence as a whole, taking into account evidence favorable as well as unfavorable to the decision. *Winschel v.*

*Comm'r of Soc. Sec.*, 631 F.3d 1176, 1178 (11th Cir. 2011) (citation omitted); *Foote v. Chater*, 67 F.3d 1553, 1560 (11th Cir. 1995); *Martin v. Sullivan*, 894 F.2d 1520, 1529 (11th Cir. 1990). Unlike findings of fact, the Commissioner's conclusions of law are not presumed valid and are reviewed under a de novo standard. *Keeton v. Dep't of Health & Human Servs.*, 21 F.3d 1064, 1066 (11th Cir. 1994); *Maldonado v. Comm'r of Soc. Sec.*, No. 20-14331, 2021 WL 2838362, at *2 (11th Cir. July 8, 2021); *Martin*, 894 F.2d at 1529. "The [Commissioner's] failure to apply the correct law or to provide the reviewing court with sufficient reasoning for determining that the proper legal analysis has been conducted mandates reversal." *Keeton*, 21 F.3d at 1066.

The ALJ must follow five steps in evaluating a claim of disability. 20 C.F.R. §§ 404.1520, 416.920. At the first step, the ALJ must determine whether the claimant is currently engaged in substantial gainful employment. 20 C.F.R. § 404.1520(a)(4)(i), (b); 20 C.F.R. § 416.920(a)(4)(i), (b). At step two, the ALJ must determine whether the impairment or combination of impairments from which the claimant allegedly suffers is "severe." 20 C.F.R. § 404.1520(a)(4)(ii), (c); 20 C.F.R. § 416.920(a)(4)(ii), (c). At step three, the ALJ must decide whether the claimant's severe impairments meet or medically equal a listed impairment. 20 C.F.R. § 404.1520(a)(4)(iii), (d); 20 C.F.R. § 416.920(a)(4)(iii), (d). If the ALJ finds the claimant's severe impairments do not meet or medically equal a listed impairment,

then the ALJ must determine whether the claimant has the residual functional capacity ("RFC") to perform his past relevant work. 20 C.F.R. § 404.1520(a)(4)(iv), (e)–(f); 20 C.F.R. § 416.920(a)(4)(iv), (e)–(f).

If the claimant cannot perform his past relevant work, the ALJ must determine at step five whether the claimant's RFC permits him to perform other work that exists in the national economy. 20 C.F.R. § 404.1520(a)(4)(v), (g); 20 C.F.R. § 416.920(a)(4)(v), (g). At the fifth step, there are two ways in which the ALJ may establish whether the claimant is capable of performing other work available in the national economy. The first is by applying the Medical Vocational Guidelines, and the second is by the use of a vocational expert. *Phillips v. Barnhart*, 357 F.3d 1232, 1239-40 (11th Cir. 2004); *Atha v. Comm'r, Soc. Sec. Admin.*, 616 F. App'x 931, 933 (11th Cir. 2015).

The claimant bears the burden of proof through step four. *Atha*, 616 F. App'x at 933. If the claimant meets this burden, then the burden temporarily shifts to the Commissioner to establish the fifth step. *Id.*; 20 C.F.R. § 404.1520(a)(4)(v), (g); 20 C.F.R. § 416.920(a)(4)(v), (g). If the Commissioner presents evidence of other work that exists in significant numbers in the national economy that the claimant is able to perform, only then does the burden shift back to the claimant to prove he is unable to perform these jobs. *Atha*, 616 F. App'x at 993.

### C.    Procedural History

On August 31, 2021, Plaintiff applied for a period of disability and disability insurance benefits, and for supplemental security income, alleging disability beginning on June 30, 2018. (Tr. 77, 78, 230-38). Plaintiff later amended the onset date to December 1, 2020. (Tr. 108). The applications were denied initially and on reconsideration. (Tr. 77, 78, 103, 104). Plaintiff requested a hearing and on November 21, 2023, a hearing was held before Administrative Law Judge James P. Alderisio ("ALJ"). (Tr. 22-37). On January 4, 2024, the ALJ entered a decision finding Plaintiff had not been under a disability from December 1, 2020, through the date of the decision. (Tr. 108-18). Plaintiff requested review of the decision, but the Appeals Council denied Plaintiff's request on February 26, 2024. (Tr. 1-5).

Plaintiff began this action by Complaint (Doc. 1) filed on April 23, 2024, and the case is ripe for review. The parties consented to proceed before a United States Magistrate Judge for all proceedings. (Doc. 1).

### D.    Summary of ALJ's Decision

In this matter, the ALJ found Plaintiff meets the insured status requirements of the Social Security Act through December 31, 2025. (Tr. 110). At step one of the sequential evaluation, the ALJ found that Plaintiff had not engaged in substantial gainful activity since December 1, 2020, the amended alleged onset date. (Tr. 110). At step two, the ALJ found that Plaintiff had the following severe impairments:

"spinal impairment; residual limitations due to a history of upper left compartment syndrome, status post multiple fasciotomies; obesity; substance abuse; PTSD/anxiety and bipolar disorder." (Tr. 111). At step three, the ALJ found that Plaintiff did not have an impairment or combination of impairments that meets or medically equals the severity of any of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1 (20 C.F.R. §§ 404.1520(d), 404.1525, 404.1526, 416.920(d), 416.925, and 416.926). (Tr. 111).

Before proceeding to step four, the ALJ found that Plaintiff had the following RFC:

> After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform light work as defined in 20 [C.F.R. §§] 404.1567(b) and 416.967(b) except he cannot climb ladders, ropes or scaffolds; he is limited to lifting and carrying with his left upper extremity to ten pounds; he can only frequently finger, handle and feel with his left upper extremity; he is limited to simple, routine, repetitive tasks with no detailed work or contact with the public.

(Tr. 113).

At step four, the ALJ determined that Plaintiff was unable to perform any past relevant work as a pizza cutter and dishwasher. (Tr. 117). At step five of the sequential evaluation process, the ALJ found that considering Plaintiff's age (40 years old on the alleged disability onset date), education (at least high school), work experience, and RFC, there were jobs that existed in significant numbers in the national economy that Plaintiff could perform. (Tr. 117). Specifically, the vocational

expert testified that a person with Plaintiff's limitations could perform such occupations as:

    (1)    Advertising Materials Distributor, DOT[1] 230.687-010, light, SVP 2

    (2)    Power Screwdriver Operator, DOT 699.685-026, light, SVP 2

    (3)    Hand Packager/Inspector of Plastics, DOT 559.687-074, light, SVP 2

(Tr. 118). The ALJ concluded that Plaintiff had not been under a disability from December 1, 2020, through the date of the decision. (Tr. 118).

## II.    Analysis

On appeal, Plaintiff raises four issues:

    (1)    Whether the ALJ failed to consider all of the alleged impairments at step two;

    (2)    Whether the ALJ erred in failing to address Plaintiff's moderate limitations in concentration and persistence in the RFC assessment and in the hypothetical posed to the vocational expert;

    (3)    Whether the ALJ erred in assessing the RFC with respect to Plaintiff's left upper extremity; and

    (4)    Whether the error in the RFC about Plaintiff's limitation with his left upper extremity was cured at step five.

(Doc. 10, p. 3, 5, 9, 13).

---

[1] DOT refers to the *Dictionary of Occupational Titles*.

## A.    Step Two Analysis

Plaintiff claims that he alleged disability based on agoraphobia, as well as other impairments. (Doc. 10, p. 4). Plaintiff also claims that his agoraphobia was often discussed in the medical record, but was not included at step two of the sequential evaluation. (Doc. 10, p. 4). Plaintiff further claims that the ALJ only mentioned agoraphobia when restating the impairments Plaintiff alleged that caused him to be unable to work, and argues that there is no way to determine whether the ALJ considered Plaintiff's agoraphobia impairment in concluding that Plaintiff was able to work. (Doc. 10, p. 4-5).

At step two, an ALJ considers the severity of a claimant's impairments. 20 C.F.R. §§ 404.1520(a)(4)(ii), 416.920(a)(4)(ii). An impairment or combination of impairments is not severe "if it does not significantly limit [a claimant's] physical or mental ability to do basic work activities" 20 C.F.R. §§ 404.1522(a), 416.922(a). In other words, a severe impairment is an impairment or combination thereof that *significantly* limits a claimant's abilities to perform basic work activities. *See* SSR 85-28, 1985 WL 56856, *4 n.1; 20 C.F.R. §§ 404.1520(c), 404.1522(a), 416.920(c), 416.922(a).

The severity of an impairment "must be measured in terms of its effect upon ability to work, and not simply in terms of deviation from purely medical standards of bodily perfection or normality." *McCruter v. Bowen*, 791 F.2d 1544, 1547 (11th

Cir. 1986). The impairment must also last or be expected to last for a continuous period of at least 12 months. 20 C.F.R. §§ 404.1520(a)(4)(ii), 404.1509, 416.920(a)(4)(ii), 416.909. The claimant bears the burden at step two of proving that he has a severe impairment or combination of impairments. *O'Bier v. Comm'r of Soc. Sec. Admin.*, 338 F. App'x 796, 798 (11th Cir. 2009).

This inquiry "acts as a filter in that the finding of any severe impairment ... is enough to satisfy the requirement of step two and allow the ALJ to proceed to step three." *Ball v. Comm'r of Soc. Sec. Admin.*, 714 F. App'x 991, 993 (11th Cir. 2018) (internal quotations omitted). "Nothing requires that the ALJ must identify, at step two, all of the impairments that should be considered severe." *Heatly v. Comm'r of Soc. Sec.*, 382 F. App'x 823, 825 (11th Cir. 2010). If any impairment or combination of impairments qualifies as "severe," step two is satisfied and the claim advances to step three. *Gray v. Comm'r of Soc. Sec.*, 550 F. App'x 850, 852 (11th Cir. 2013) (citing *Jamison v. Bowen*, 814 F.2d 585, 588 (11th Cir. 1987)). "[B]eyond the second step, the ALJ must consider the entirety of the claimant's limitations, regardless of whether they are individually disabling." *Griffin v. Comm'r of Soc. Sec.*, 560 F. App'x 837, 841-842 (11th Cir. 2014) (internal citations omitted).

With this standard in mind, even if the ALJ should have characterized Plaintiff's agoraphobia as a severe impairment, any error is harmless because the ALJ characterized other impairments – spinal impairment; residual limitations due

to a history of upper left compartment syndrome, status post multiple fasciotomies; obesity; substance abuse; PTSD/anxiety and bipolar disorder – as severe. (Tr. 111). The ALJ then advanced to step three of the sequential evaluation. *See Ball*, 714 F. App'x at 993. With step two satisfied, the issue then becomes whether the ALJ considered all of Plaintiff's impairments in assessing the RFC.

Plaintiff contends that agoraphobia was often discussed in the medical record, but the ALJ failed to consider it. (Doc 10, p. 4). In the decision, the ALJ found that Plaintiff alleged he could not work due his impairments, which included agoraphobia. (Tr. 114). The ALJ also acknowledged that Plaintiff claimed his agoraphobia made it difficult for him to be in public. (Tr. 114). While agoraphobia was mentioned in some records, it was mentioned in the context that Plaintiff complained of it, but these records arguably contain no treatment for or limitations from this impairment. (Tr. 1111 ("Client also reports depression, anxiety, agoraphobia and OCD and these are impacting daily functioning"); Tr. 1113 (same); Tr. 1116 (same); Tr 1161 (one of the chief complaints is agoraphobia); Tr. 1171 (same as Tr. 1111); Tr. 1179 (same as Tr. 1111); Tr. 1191 (Plaintiff stated he has "some agoraphobia, trouble leaving his house, feeling like something bad will happen. Sometimes he has difficulty with stranger interactions but usually he can accomplish [these] tasks"); Tr. 1194 (Plaintiff "has some ongoing agoraphobia")). Plaintiff has the burden to show that his agoraphobia caused additional limitations

beyond those found in the RFC. *Atha*, 616 F. App'x at 933 (the claimant bears the burden of proof through step four.). Plaintiff has not shown that these medical records support additional limitations for agoraphobia especially given that the ALJ limited Plaintiff to work that has no contact with the public. (Tr. 113). Substantial evidence supports the ALJ's consideration of Plaintiff's agoraphobia.

### B.    Moderate Limitations in Concentration, Persistence, and Pace

Plaintiff argues that the ALJ erred when he failed to include specific findings on the impact of Plaintiff's moderate limitations in concentration, persistence, and pace in Plaintiff's RFC assessment and in the hypothetical to the vocational expert. (Doc. 10, p. 5, 7). Plaintiff claims that the RFC's limitation to "simple, routine, repetitive tasks with no detailed work or contact with the public" is insufficient. (Doc. 10, p. 8). Plaintiff also claims that because the ALJ did not include that Plaintiff had moderate limitations in concentration, persistence, and pace in the hypothetical posed to the vocational expert, this testimony did not cure the error. (Doc. 10, p. 8).

In the decision at step two, the ALJ found Plaintiff had the severe mental impairments of PTSD/anxiety and bipolar disorder. (Tr. 111). At step three, in discussing the functional areas of the paragraph B criteria, the ALJ found Plaintiff had moderate limitations in all four functional areas. (Tr. 112-13). As to the functional area of concentrating, persisting, or maintaining pace, the ALJ found:

> Upon mental examination, he is typically found to be cooperative, to have appropriate dress and grooming, have good eye contact, normal speech, logical and organized thought, have no hallucinations, delusions or paranoia, have a full range and affect, normal memory and to be alert, fully oriented with limited insight and judgment. (See Exhibits B7F, B11F, B14F and B20F). His medical records do not indicate any significant difficulty with concentration, persistence, or maintaining pace. The undersigned is persuaded that the evidence supports a finding that the claimant has moderate limitation in the area of concentrating, persisting, or maintaining pace.

(Tr. 112). The ALJ acknowledged that the limitations identified in the paragraph B criteria are not an RFC assessment but are used to rate the severity of the mental impairments at steps 2 and 3 of the sequential evaluation process. (Tr. 113). The ALJ then found that the RFC assessment that followed reflected the degree of limitation he found in the paragraph B mental functional analysis. (Tr. 113).

An individual's RFC is his ability to do physical and mental work activities on a sustained basis despite limitations secondary to his established impairments. *Delker v. Comm'r of Soc. Sec.*, 658 F. Supp. 2d 1340, 1364 (M.D. Fla. 2009). In determining a claimant's RFC, the ALJ must consider all relevant evidence including non-severe impairments. *Barrio v. Comm'r of Soc. Sec.*, 394 F. App'x 635, 637 (11th Cir. 2010). Furthermore, the ALJ must "'scrupulously and conscientiously probe into, inquire of, and explore for all relevant facts.'" *Henry v. Comm'r of Soc. Sec.*, 802 F.3d 1264, 1267 (11th Cir. 2015) (quoting *Cowart v. Schweiker*, 662 F.2d 731, 735 (11th Cir.1981)). In other words, ALJs "are by law investigators of the facts

and are tasked not only with the obligation to consider the reasons offered by both sides, but also with actively developing the record in the case." *Id*.

In assessing the RFC, the ALJ considered Plaintiff's mental impairments, noting that on examination, Plaintiff typically was found cooperative, was appropriately dressed, had good eye contact, had normal speech, had logical and organized thought, and had no hallucinations, delusions, or paranoia. (Tr. 116). The ALJ also summarized and relied on the opinions of State mental health experts, Leif Davis, Psy.D. and Brian McIntyre, Ph.D. (Tr. 116). The ALJ found these doctors:

> believe the claimant's mental impairments result in only moderate limitations and that he can perform simple work with reduced interaction, in jobs that do not require a fast pace. (See Exhibits B2A, B3A, B6A and B7A). The undersigned finds these opinions are generally persuasive in that the claimant is limited to simple work with reduced interaction with others. Any other limitations are not supported by the record. The opinions are, however, to the extent they are consistent with the residual functional capacity found herein, generally persuasive as they are supported by and consistent with the medical evidence of record, particularly the findings upon examination.

(Tr. 116).

After considering the medical and other evidence of record, the ALJ determined:

> The undersigned recognizes the claimant's impairments limit his ability to work --- just not as much as alleged. Therefore, the undersigned has reduced the claimant's residual functional capacity to work at the light exertional level with some additional postural and manipulative limitations. In addition, to accommodate the claimant's mental impairments, the

> undersigned has further reduced the claimant's residual functional capacity by limiting him to simple work with reduced interaction. The undersigned believes these limitations adequately accommodate the claimant's physical and mental impairments.

(Tr. 116-17).

Here, the ALJ found that Plaintiff had moderate limitations in concentration, persistence, and maintaining pace. (Tr. 112). After considering the medical and other evidence, including the opinions of the State agency psychological experts, the ALJ found that Plaintiff was capable of performing work limited to simple, routine, repetitive tasks with no detailed work or contact with the public. (Tr. 113). The ALJ then posed a hypothetical to the vocational expert that included the limitations of jobs that "would be simple/routine/repetitive task jobs. There would be no detailed instructions. There would be no contact with the public and the primary purpose of the job would not be to interact with the public . . ." (Tr. 33).

The Eleventh Circuit observed that "'when medical evidence demonstrates that a claimant can engage in simple, routine tasks or unskilled work despite limitations in concentration, persistence, and pace, courts have concluded that limiting the hypothetical to include only unskilled work sufficiently accounts for such limitations.'" *Carpenter v. Comm'r of Soc. Sec.*, 614 F. App'x 482, 490 (11th Cir. 2015) (quoting Winschel v. Comm'r of Soc. Sec., 631 F.3d 1176, 1180 (11th Cir.2011)). In this case, the ALJ properly considered Plaintiff's moderate limitations

in concentration, persistence, and pace, and included limitations in the RFC assessment and in the hypothetical posed to the vocational expert for this impairment. Considering the decision and record as a whole, substantial evidence supports the RFC assessment and hypothetical posed to the vocational expert.

### C.    Upper Left Extremity

Plaintiff challenges the ALJ's RFC assessment on Plaintiff's left upper extremity, claiming that the RFC is not sufficiently limited as to this impairment. (Doc. 10, p. 9). Plaintiff contends that he was diagnosed with compartment syndrome and rhabdomyolysis in this left arm, requiring an emergency fasciotomy in 2018 and a total of nine fasciotomies. (Doc. 10, p. 10). Plaintiff claims that this impairment and these procedures cause paralysis and swelling in the arm. (Doc. 10, p. 10). Plaintiff also testified he lost all feeling in his left hand. (Doc 10, p. 10 (citing Tr. 26)).

As stated in the prior section, an individual's RFC is his ability to do physical and mental work activities on a sustained basis despite limitations secondary to his established impairments. *Delker v. Comm'r of Soc. Sec.*, 658 F. Supp. 2d 1340, 1364 (M.D. Fla. 2009). In determining a claimant's RFC, the ALJ must consider all relevant evidence including non-severe impairments. *Barrio v. Comm'r of Soc. Sec.*, 394 F. App'x 635, 637 (11th Cir. 2010).

In the decision at step two, the ALJ found Plaintiff's upper left compartment syndrome to be a severe impairment. (Tr.111). The ALJ acknowledged that Plaintiff had a history of compartment syndrome in his upper left extremity, had several operations to treat it, testified that he lost feeling in the left arm and hand, had pain in this extremity, had reduced grip strength, and could not lift much. (Tr. 114).

In the summary of a 2022 independent medical examination by Thomas Beaman, D.O., the ALJ noted that Plaintiff had 5/5 muscle strength in all extremities, no motor deficit, some decreased sensation in his left hand, intact fine hand manipulation, and full motion in all his joints. (Tr. 115). The ALJ also summarized a 2023 second independent medical examination by Tiffany Lairano, M.D. (Tr. 115). In this opinion, Dr. Lairano found Plaintiff had 5/5 strength in his extremities, abnormal sensation in his left upper extremity, could lift and carry five to ten pounds, and had limited ability to grip objects for long periods of time due to weakness and mild numbness in his left upper extremity. (Tr. 115). The ALJ found this opinion generally consistent with the RFC except as to the lifting requirement, which he found was not supported by the record. (Tr. 115).

The ALJ determined: "[Plaintiff] has, however, had little, if any, treatment for [his left upper extremity impairment] during the time under review. Nevertheless, the undersigned has significantly reduced the claimant's residual functional capacity

to accommodate this impairment." (Tr. 114). Indeed, the RFC was limited to frequently fingering, handling, and feeling with his left upper extremity. (Tr.113).

Here, the ALJ considered Plaintiff's left upper extremity impairment when assessing the RFC. The ALJ noted that Plaintiff received little treatment for this condition during the relevant period. The ALJ also noted that at an independent medical examination in 2022, Plaintiff has intact fine manipulation and full strength in his extremities. (Tr. 115). The ALJ thoroughly considered the record as a whole and substantial evidence supports the ALJ's assessment of Plaintiff's left upper extremity impairment.

In essence, Plaintiff invites the Court to reweigh the evidence, which it cannot do. A court may not decide the facts anew, reweigh the evidence, or substitute its judgment for that of the Commissioner. *Mitchell v. Comm'r, Soc. Sec. Admin.*, 771 F.3d 780, 782 (11th Cir. 2014). "The ALJ need not refer to every piece of evidence in his decision, so long as a reviewing court can conclude that the ALJ considered the claimant's medical condition as a whole." *Id.* Even if the evidence preponderates against the Commissioner's decision, the Court must affirm if substantial evidence supports the Commissioner's decision. *Buckwalter v. Acting Comm'r of Soc. Sec.*, 5 F.4th 1315, 1320 (11th Cir. 2021). The Court finds no error.

### D.    Jobs

Plaintiff claims that by not properly assessing Plaintiff's upper left extremity impairment in the RFC, the ALJ also erred in finding Plaintiff could perform other work in the national economy. (Doc. 10, p. 13). But as determined above, the ALJ did not err in the RFC assessment on Plaintiff's ability to use his left upper extremity. Plaintiff next argues that the occupations of advertising material distributor hand packager/inspector, and power screwdriver operator "require near constant use of the hands in some respects," which Plaintiff claims exceeds the RFC assessment. (Doc. 14-15). This argument is unpersuasive.

In the RFC assessment, the ALJ limited Plaintiff to frequently fingering, handling, and feeling with the left upper extremity. (Tr. 113). In the hypothetical to the vocational expert, the ALJ included limitations for the left upper extremity of lifting and carrying up to ten pound and frequently fingering, handling, and feeling. (Tr. 32-33). The vocational expert testified that a person with Plaintiff's limitations, including those related to his left upper extremity, could perform such jobs as advertising material distributor, power screwdriver operator, and hand packer/inspector plastics. (Tr. 33). According to the DOT, each of these jobs requires only frequent – not constant as alleged by Plaintiff – reaching, handling, and fingering, the same limitation that was in both the RFC assessment and the hypothetical posed to the vocational expert. *See* DICOT 230.687-010 Advertising-

Material Distributor, 1991 WL 672162; DICOT 699.685-026 Power-Screwdriver Operator, 1991 WL 678865; and DICOT 559.687-074 Inspector and Hand Packager, 1991 WL 683797. Thus, substantial evidence supports the ALJ's reliance on the vocational expert's testimony that even with Plaintiff's left upper extremity limitations, Plaintiff was capable of performing the listed jobs. Substantial evidence supports the ALJ's step five finding.

## III.   Conclusion

For the reasons discussed above, the Court finds that the decision of the Commissioner is supported by substantial evidence and the Commissioner applied the correct legal standard. The decision of the Commissioner is **AFFIRMED**. The Clerk of Court is directed to enter judgment consistent with this opinion, terminate all deadlines, and close the case.

**DONE** and **ORDERED** in Fort Myers, Florida on June 25, 2025.

DOUGLAS N. FRAZIER
UNITED STATES MAGISTRATE JUDGE

Copies furnished to:

Counsel of Record
Unrepresented Parties